Gail GLADDEN *v.* ARKANSAS CHILDREN'S
HOSPITAL, Cindy VAN WINKLE and Larry
WOODARD
and
Loretta SAMPLES *v.* SALINE MEMORIAL HOSPITAL

86-199 & 86-201                    728 S.W.2d 501

Supreme Court of Arkansas
Opinion delivered May 4, 1987

*Jim O'Hara*, for appellants.

*Friday, Eldredge & Clark*, by: *James W. Moore* and *Michael S. Moore*, for appellee Arkansas Children's Hospital.

*Joe Kelley Hardin*, for appellee Saline Memorial Hospital.

STEELE HAYS, Justice. These cases, *Gladden* v. *Arkansas*

*Children's Hospital, et al.,* and *Samples* v. *Saline Memorial Hospital* are certified to us by the Court of Appeals under Rule 29(4)(b) and are consolidated for purposes of appeal. We are again asked to modify the employment at will doctrine. Neither case squarely presents the issue which we said in *Gauldin* v. *Emerson Electric Co.,* 284 Ark. 149, 680 S.W.2d 92 (1984) and *Jackson* v. *Kinark Corp.,* 282 Ark. 548, 669 S.W.2d 898 (1984) we would reexamine in light of current law, because in neither case was the employment for a definite term nor was there an express agreement that an employee would be dismissed only for cause. However, we take this opportunity to more fully explain our position with respect to the at will rule.

### *Samples v. Saline Memorial Hospital*

Appellant Loretta Samples began working as a nurse at Saline Memorial Hospital in 1981. She was given a hospital manual dealing with a wide variety of administrative and personnel policies. A provision on probation stated that "no rights are guaranteed" during a six month probationary period and a provision on termination stated, "any of the following items constitute grounds for termination." The list contains thirteen grounds ranging from public drunkenness to insubordination, including "chronic tardiness and/or absenteeism." Two written warnings and two suspensions without pay were required before termination for absenteeism.

On a Monday afternoon in April, 1985 Ms. Samples was called to the office of the hospital controller, Ron Morris, where she was handed a check and told she was discharged for absenteeism. Ms. Samples protested the allegation and went to the office of the hospital administrator, Mr. Busby. Busby told her he would talk with Morris, that she should go home and wait for him to call. Busby called that afternoon to say she was reinstated, subject to a ninety day probation, and to report to work the next morning. On Tuesday morning Ms. Samples called Morris to say she was not well enough to come in. She described his attitude as entirely cordial and he told her the severance check would be voided. On Wednesday Ms. Samples spent most of the day trying to meet with Busby and Morris. When she finally saw Morris he told her Busby had overturned his decision and decided to reinstate her on ninety days probation. When Ms. Samples again

denied being absent Morris referred her to Busby and she and Busby resumed the discussion with no understanding being reached. Ms. Samples persisted in her efforts to see Mr. Busby and on Friday she was told she could "either quit, or be fired or be on ninety days probation." When Ms. Samples refused to accept probation Mr. Busby told her she left him no choice but to terminate her.

Ms. Samples filed suit against the hospital for $50,000 for past and future wages, alleging that her discharge was arbitrary and in bad faith and constituted a breach of her employment contract. At the close of the plaintiff's proof, Saline Memorial Hospital moved for a directed verdict which the trial court granted. Ms. Samples has appealed. We affirm the trial court.

■ In the foregoing statement of facts we have observed the rule that on appeal from a directed verdict we view the facts most favorably to the appellant. *Goodnight* v. *Richardson*, 286 Ark. 38, 688 S.W.2d 941 (1985); *Stalter* v. *Coca-Cola Bottling Co.*, 282 Ark. 443, 669 S.W.2d 460 (1984).

On appeal Ms. Samples contends the personnel policy manual of the hospital constitutes a contract. She relies on *Toussaint* v. *Blue Cross and Blue Shield*, 292 N.W.2d 880 (Mich. 1980), *Pine River Bank* v. *Metille*, 333 N.W.2d 622 (Minn. 1983), *Weiner* v. *McGraw-Hill, Inc.*, 443 N.E.2d 441, 33 A.L.R. 4th 110 (1982), *Yartzoff* v. *Democrat Herald Publishing Company*, 576 P.2d 356 (Or. 1978), *Wagner* v. *Sperry Univac*, 458 F. Supp. 505 (E.D. of Pa. 1978) and *Osterkamp* v. *Arkhola Mfg., Inc.*, 332 N.W.2d 275 (S.C. 1983). But in those cases the discharge was in direct violation of an express provision of a personnel manual. In *Toussaint* the manual announced a policy of termination "for just cause only." In *Weiner*, "for just and sufficient cause only." In *Osterkamp*, "not without just cause." In *Metille* discharge was subject to review by the Executive Officer. In *Yartzoff*, the manual assured the employee of written warning of unsatisfactory job performance and two temporary suspensions before discharge. In *Wagner*, a reduction in force was to be governed by seniority in determining who would be laid-off and Wagner's discharge violated that provision.

■■ We need not decide whether the hospital's manual constituted an employment contract, as we find no proof to

support the allegation the manual was breached. Ms. Samples submits the hospital promised to discharge her *only* for one of the thirteen reasons listed in the section on termination. We find no such provision. The manual simply lists conduct which could result in termination, with no implications that those infractions alone constitute cause for discharge. That does not meet what we have said we were willing to review. See *Bryant* v. *Southern Screw Machine Products Company, Inc.*, 288 Ark. 602, 707 S.W.2d 321 (1986).

Ms. Samples also contends the hospital breached provisions of the manual guaranteeing certain steps would be followed before discharge for absenteeism. That might be said of the attempted discharge by Morris, but that was promptly rescinded by Busby and Ms. Samples was reinstated subject only to a ninety-day probationary period. The manual gave the hospital the power to place an employee on disciplinary probation at any time. Moreover, the manual also provided that an employee who is promoted or transferred to another position must complete a six-month probation and Ms. Samples had been promoted from D.R.G. Code to Utilization Review Coordinator five months earlier. In sum, there was no proof that the hospital failed to substantially comply with the provisions of the manual in placing Ms. Samples on probation. See *Erickson* v. *Griffin*, 277 Ark. 433, 642 S.W.2d 308 (1982).

### Gladden v. Arkansas Children's Hospital

After some 18 month's employment, appellant Gail Gladden was terminated in August, 1984 by Arkansas Children's Hospital. Initially Mrs. Gladden filed suit based on the tort of outrage against the hospital and against her supervisors, Cindy Van Winkle and Larry Woodard, alleging nightmares, crying spells, anxiety and depression resulting from wrongful discharge. She asked for compensatory damages of $50,000 and punitive damages of $50,000. The defendants moved for partial summary judgment, which was granted, and Mrs. Gladden amended her complaint to allege that personnel regulations of the hospital constituted a contract of employment between the parties which was breached by the defendants. The tort claim was not pursued. The defendants again moved for summary judgment and the motion was granted.

On appeal Ms. Gladden proposes that the employment at will doctrine be modified "to allow a written contract of employment to be enforced which limits the right of an employer to discharge an employee, in the absence of a definite term of employment."

## Discussion

It might be well to note at the outset that the claim of wrongful discharge in the context of these cases is readily distinguishable from *M.B.M.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1981) where, without deciding the issue, we conceded merit in the argument that where an employee is discharged in violation of a well established public policy the law recognizes a cause of action. *Counce*, p. 273.

In *Griffin* v. *Erickson*, 277 Ark. 433, 642 S.W.2d 38 (1982) dictum of the opinion stated that the employment at will doctrine is deeply embedded in our case law. *See St. Louis I.M and S.R. Co.* v. *Matthews*, 64 Ark. 398, 42 S.W. 902 (1897); *Petty* v. *Missouri Pacific Railway Company*, 205 Ark. 990, 167 S.W.2d 895 (1943); *Tinnon* v. *Missouri Pacific Railroad Co.*, 282 F.2d 773 (1960); *Smithey* v. *St. Louis Southwestern Railway Co.*, 237 F.2d 637 (1956), and *Roberts* v. *Thompson*, 107 F. Supp. 775 (E.D. Ark. 1952). *Griffin* further stated that the doctrine recognizes the right of *either party* to terminate at will even where the conditions of employment are that an employee would not be discharged except for good cause, quoting from *St. Louis I.M. and S.R. Company* v. *Matthews, supra.*

In cases following *Erickson* v. *Griffin*, we expressed a willingness to reexamine the principle in the light of more recent trends in the law. See *Gauldin* v. *Emerson Electric Co.* and *Jackson* v. *Kinark Corp., supra.* But we have said as well that the review will be based on employment for a particular length of time or where an employee is discharged arbitrarily or in bad faith in violation of an agreement to discharge only for cause. *Bryant* v. *Southern Screw Machine Products Company, Inc.*, 288 Ark. 601, 707 S.W.2d 321 (1986). *Gauldin* v. *Emerson Electric Co., supra.*

Neither appellant claims she was employed for a definite length of time. Both contend the personnel manuals of the

hospitals limit the right to discharge except for cause. We disagree. While the manuals contain provisions describing methods for dismissal under certain circumstances and specifying kinds of conduct that could result in summary dismissal, they do not contain provisions that an employee will not be discharged except for cause. That being so, the cases do not present the issues we defined.

We do, however, believe that a modification of the at will rule is appropriate in two respects: where an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co.* v. *Matthews*, 64 Ark. 398, 42 S.W. 902 (1897), that the at will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless it is for a definite term. With those two modifications we reaffirm the at will doctrine.

We recognize that these cases bear some resemblance to *Jackson* v. *Kinark Corp., supra,* where we reversed the granting of summary judgment for a fuller development of the factual issues, noting a "possible implication" from Kinark's manual that once probation was ended, an employee could be discharged only for cause. But we have considered several employment cases since *Jackson* and we realize *Jackson* may have given the impression that an implied provision would suffice. We have come to the conclusion that an implied provision against the right to discharge is not enough. The firm rule at common law is that either party can terminate at will and while the rule has been criticized, 24 *Arkansas Law Review* 729, 93 *Harvard Law Review* 1816, we are unwilling to replace it with a rule that subjects the employer to suit for wrongful discharge whenever an employee is terminated.

As neither manual contains an express provision that discharge will not be without cause we find no error in disposing of the cases by summary judgment and directed verdict.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This is the appropriate time to keep our promise made in *Jackson* v. *Kinark Corp.*, 282 Ark. 548, 669 S.W.2d 898 (1984). After three years and several cases, we are again asked to soften the harshness of our prior decisions concerning the common law doctrine of "employment-at-will." If we are ever to recognize and alter the harsh and unjust results of our past decisions, it should be now.

After the abolishment of slavery in 1865 the employment relationship became known as "master-servant." As late as 1968 this Court determined that a "servant" is an employee whose physical conduct is subject to the master's right of control. *Hinson* v. *Culberson-Stowers Chevrolet, Inc.*, 244 Ark. 853, 427 S.W.2d 539 (1968). We have now elevated the relationship to one of "employer-employee." *Sandy* v. *Salter*, 260 Ark. 486, 541 S.W.2d 929 (1976).

Our existing strict adherence to the employment-at-will doctrine is archaic and in need of revision. If an employee agrees to work and be bound by conditions and restrictions set out in a policy manual or employee handbook prepared by the employer, the employer should also be bound by the same guidelines. There is no equitable or just reason why an agreement such as this one should not be enforced. Our prior decisions have allowed the employer to do as he wishes in the employment relationship except that we have recognized that the employee has the right to quit at will. The employee's right to quit at will is an unequal exchange for all he gives up for that single right. It is time to balance the equities.

In the present case Loretta Samples seeks only to have her contract of employment construed in accordance with the written declarations of the employee handbook. This is not too much to ask. According to testimony presented at the trial both parties considered these written terms to be binding. At the very least there was a jury question presented at the trial level. In *Jackson* we remanded the case for further proceedings. *Jackson* involved a fact situation almost identical to the present case.

We have said in the past that there must be mutuality of obligation to support the existence of a contract. *J.L. McEntire and Sons, Inc.* v. *Hart Cotton Company, Inc.*, 256 Ark. 937, 511 S.W.2d 179 (1974). In the present case the pay received by the

appellant for her work is ample consideration from the appellee. The employer received the following consideration from the appellant: (1) labor needed to efficiently operate the hospital; (2) dependable performance of her duties; (3) a probationary period of six months before permanent employment to determine her competence and dependability; (4) the right to discharge her if she did not abide by the rules stated in the manual; (5) the right to counsel and reprimand her or take other disciplinary action; (6) her participation in the retirement plan after one year of employment; (7) her signature acknowledging receipt and reading of the manual; and (8) a promise of a fifteen day written notice of intention to resign. It would appear that by requiring an employee to read and sign the policy manual at the beginning of employment, that such policies became terms of the employment contract. In addition, the employees were furnished copies of all changes in the handbook.

This manual was written and printed by the employer. At page three it stated: "No rights are guaranteed under any personnel policies until the probationary period is completed." There was no reason to include this statement unless it meant that after six months the rights stated in the manual were to become enforceable. The heart of the problem before us is on pages sixty-five and sixty-six of the manual where it purports to implement an attendance policy. Step one provides that counseling will be given to any employee who has three incidents of unauthorized absences within a period of twelve weeks. Step two makes the same provisions for two or more additional incidents within the following twelve weeks. Step two makes the same provisions for two or more additional incidents within the following twelve weeks. Step three calls for a three day suspension, without pay, if there are two additional unauthorized absences. Step four provides for a five day suspension, without pay, for the next two days absence during the next twelve weeks. Step five provides for termination if there are two or more unauthorized absences following step four.

It is mandatory that employees comply with all portions of the manual. Employees read the manual at the time they are hired and sign a form stating that they have read it. The policy manual requires employees to give a written notice before resigning. The hospital administrator testified that he expected

employees to follow the terms of the manual and that employees are justified in thinking that management will also follow the same policies.

The only way for the appellee to avoid the terms of the contract is to hide behind one of the six month probation clauses. There are two such clauses contained in the manual. The first one applies to initial periods of the employment and the second one applies to periods following a transfer or promotion. The second period of probation is for the purpose of evaluating the employee's performance of new job responsibilities. The manual states: "During *this* probationary period, the employee will receive all benefits he/she was entitled to *before* the transfer or promotion [Emphasis added]." Therefore, it is reasonable and logical to interpret the second or successive period of probation as applying only to the new responsibilities of the position to which the employee has been transferred or promoted. To construe it otherwise would, in effect, deny the employee the rights acquired upon the completion of the initial six-month probation period.

The appellant did not receive the consultations as provided in the policy manual. In fact there is little, if any, proof that she violated policy. It is undisputed that she did not receive any of the benefits mandated by the five-step procedure. This five-step procedure was a part of the manual and was agreed upon before her employment began. The personnel manager for the appellee stated that after the six-month probation period the employees are guaranteed the rights stated in the manual. She also testified that employees were not told they could be fired for no reason.

The employee, the employer's administrator, and the personnel manager all testified that the manual was binding upon both parties. The hospital administrator testified that he had never told an employee that he could be fired for no reason. It is logical then to assume that an employee could not be terminated without just cause. I must, therefore, conclude that there was a jury question presented and that the trial court improperly took away the jury's right to decide the facts presented in this case. This is the appropriate case to change the harsh consequences of the common law doctrine of employment-at-will. The majority opinion is a well reasoned and well written opinion except for the disappointing conclusion and result.

Although this dissent is directed to *Samples*, it applies with equal force to *Gladden*. I would reverse and remand for a trial on the merits of the case.