# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1895

_____

JEFF EDDINGS; SUSAN EDDINGS,          *
                                      *
         Plaintiffs - Appellants,     *
                                      *
   v.                                 *
                                      *
CITY OF HOT SPRINGS,                  *
ARKANSAS; KENT MEYERS, City           *
Manager, In His Official and Individual *
Capacity; DEBBIE MAXWELL, In Her      *    Appeal from the United States
Official and Individual Capacity; GARY *    District Court for the Western
ASHCRAFT, Individually and as Chief   *    District of Arkansas.
of the Hot Springs Police Department;  *
HOT SPRINGS POLICE                    *
DEPARTMENT; STEVE HILL,               *
Individually and In His Official      *
Capacity; WILLIE MCCOY, In His        *
Official and Individual Capacity; MIKE *
INGRAM, In His Official and Individual *
Capacity; ALAN STORY,  In His         *
Official and Individual Capacity; BILL *
GAUT, In His Official and Individual  *
Capacity; WALT EVERTON, In His        *
Official and Individual Capacity,     *
                                      *
         Defendants - Appellees.      *


_____

Submitted: November 6, 2002
Filed: March 12, 2003

_____

Before MCMILLIAN, MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Mr. Jeff Eddings, a former Hot Springs, Arkansas police officer, and his wife, Mrs. Susan Eddings, an exotic dancer, appeal the district court's[1] adverse grant of summary judgment on their 42 U.S.C. § 1983 claims. The Eddings' claims were based on events surrounding the termination of Mr. Eddings from his position as a Hot Springs police officer. He alleged substantive and procedural due process and equal protection violations under the Fifth and Fourteenth Amendments to the United States Constitution. He also articulated defamation and other state tort claims based on alleged public statements by the defendants.

Mrs. Eddings alleged violation of her First Amendment rights based on the defendants' conduct, which she believed to have been motivated by a desire to chill her exotic dancing. Together, the Eddings alleged conspiracy claims under 42 U.S.C. § 1985 based on the belief that defendants had conspired to interfere with Mrs. Eddings' exotic dancing by (1) visiting retribution upon Mr. Eddings employment, and (2) directly acting to hinder Mrs. Eddings' ability to earn income as a dancer. We affirm the district court's grant of summary judgment.[2]

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

[2]In their brief on appeal, Mr. and Mrs. Eddings did not assert any grounds to reverse the district court's grant of summary judgment on their § 1985 conspiracy claim or their § 1983 substantive due process or equal protection claims. They did identify these claims in the "Summary of the Argument" section of their brief by

# I

The City of Hot Springs hired Mr. Eddings as a police officer in March of 1997. He completed his training and graduated from probationary status in March of 1998. The terms of his employment were set forth in an employee handbook, the Hot Springs Police Department Policy and Procedures Manual (the "Manual"). The Manual provided a review procedure for use by employees following their receipt of adverse employment decisions. The Manual did not state that employees could only be terminated for cause.

In August of 1999, Mrs. Eddings began working as an exotic dancer at a nightclub in Hot Springs, the "Playmates Club". Mrs. Eddings testified in her deposition that her husband's co-workers, Hot Springs police officers, would frequent the club and stand by the door while she performed. She stated that police presence at the club and customer knowledge of her marriage to a police officer chilled her ability to sell dances and drinks, thereby reducing her income. She also stated that police officers occasionally would follow her as she traveled home from work. Mrs. Eddings eventually quit her job at the Playmates Club and began commuting to Memphis, Tennessee, where she resumed work as an exotic dancer.

On April 5, 2001, the Hot Springs Police Department Internal Affairs Board ("IAB")[3] began an investigation regarding Mr. Eddings at the request of Police Chief Gary Ashcraft. The investigation followed Mr. Eddings' admission to a supervisor

---

claiming without explanation that the district court had erred in its grant of summary judgment on these topics. Because they did not actually present grounds for reversal, we deem the Eddings to have waived these claims on appeal. Harris v. Folk Construction Co., 138 F.3d 365, 367 n.1 (8th Cir. 1998).

[3]Defendants Willie McCoy, Mike Ingram, Alan Story, Bill Gaut, and Walt Everton were the members of the Internal Affairs Board.

that he had used a gaming device in a Hot Springs nightclub. The IAB concluded that Mr. Eddings had engaged in an illegal gambling activity in violation of A.C.A. § 5-66-106 and in violation of multiple written policies of the Hot Springs Police Department. The IAB concluded that the gambling activity involved not only the use of a gaming device, but the receipt of a cash prize from a bartender at the nightclub. This activity occurred during a time when the Hot Springs Police Department was actively investigating the use of gaming devices at nightclubs throughout Hot Springs. The IAB recommended to Chief Ashcraft that Mr. Eddings' employment be terminated. On May 15, 2001, Chief Ashcraft met with Mr. Eddings and presented him with a written notice of termination. In addition to citation of the gambling incident, Mr. Eddings' written notice of termination cited dishonesty in his dealings with the IAB based on the results of a polygraph test administered during the investigation.

Although not referenced in the written notice as a basis for termination, Mr. Eddings had been the subject of an earlier IAB investigation. This earlier IAB investigation was based on allegations that he had informed Hot Springs nightclubs of impending raids. During his deposition in the present case, Mr. Eddings admitted that, on one occasion, after he received a tip from a fellow officer suggesting that a task force might raid Hot Springs nightclubs, he advised his wife to stay home from work. On that night, Mrs. Eddings stayed home from work, the Playmates Club was raided, and other dancers were arrested. These other dancers were released without being charged.

Following termination, Mr. Eddings appealed his termination to the Civil Service Commission. Before the Civil Service Commission, he was afforded the opportunity to present witnesses, and his attorneys were permitted the opportunity to cross examine witnesses. The Civil Service Commission upheld Mr. Eddings' termination. Mr. Eddings did not appeal the Civil Service Commission's decision in the Arkansas circuit court as permitted under A.C.A. § 14-51-308(e)(1)(A).

4

Mr. and Mrs. Eddings brought numerous claims under 42 U.S.C. § 1983 based on alleged violations of their constitutional rights. However, the only § 1983 claims advanced in their appeal brief are Fourteenth Amendment due process claims that alleged a protected property interest and liberty interest in Mr. Eddings' employment and reputation, respectively, and a First Amendment claim that alleged interference with Mrs. Eddings' free expression. We deem their remaining § 1983 claims as well as their conspiracy claims under § 1985 to be waived. See Note 2, supra. We address the appealed federal claims in turn below.

The Eddings' also raised numerous claims under Arkansas law. After granting the defendants' motion for summary judgment on the federal claims, the district court declined to retain jurisdiction over the state law claims. See 28 U.S.C. §1367(c)(3). Finding no abuse of discretion in the district court's election to decline the retention of jurisdiction, we need not address any of the state law claims.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo viewing the record in a light most favorable to the non-moving party and giving the non-moving party the benefit of all reasonable inferences supported by the record. ACT, Inc., v. Sylvan Learning Sys., Inc., 296 F.3d 657, 661-62 (8th Cir. 2002) (standard of review).

## III.

Mr. Eddings alleged that he enjoyed a protected property interest in continued employment and a protected liberty interest in his good name and reputation. He further alleged that the defendants were state actors who violated his Fourteenth Amendment procedural due process rights by depriving him of these protected interests without a pre-termination hearing or a name-clearing hearing. The district court determined that Mr. Eddings had no protected interest in continued employment and that he failed to identify evidence of defamation or damage to his reputation. We agree.

To determine whether an employee enjoys a protected property interest in continued employment, we look to state law. Bishop v. Wood, 426 U.S. 341, 344-45 (1976); Thompson v. Adams, 268 F.3d 609, 611 (8th Cir. 2001). In Arkansas, employment is "at-will" unless the employment is for a fixed term or unless an employee handbook contains "an *express provision* against termination except for cause . . . ." Gladden v. Arkansas Children's Hospital, 728 S.W.2d 501, 505 (Ark. 1987) (emphasis in original). Mr. Eddings' employment was not for a fixed term, and the Hot Springs Police Department Policy and Procedures Manual contained no cause requirement for termination.

The Manual did provide, "an absolute right to due process prior to the imposition of a disciplinary action." However, such a provision is not sufficient to change the at-will status of an employee under Arkansas law. Applying Arkansas law, we have repeatedly held that a handbook which provides a review procedure does not give rise to an expectation of continued employment, but rather only supports an expectation of a right to participate in the review procedure. Thompson, 268 F.3d at 612-13 (8th Cir. 2001); Hogue v. Clinton, 791 F.2d 1318, 1324-25 (8th Cir. 1986) (stating that a handbook that provides for a review procedure, "creates only an expectancy of review, not of continued employment; the procedures outlined place

no significant substantive restrictions on the decision-making. . . . We do not see, then how [the employee] could have harbored anything more than a unilateral expectation of continued employment, insufficient to entitle him to due process protection.") (citation omitted). Because Mr. Eddings was an employee at will, he enjoyed no protected interest in continued employment and summary judgment was appropriate as to his deprivation of property interest procedural due process claim.

Mr. Eddings did enjoy a protected liberty interest in his "good name, reputation, honor, or integrity," Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir. 1994) (citing Board of Regents v. Roth, 408 U.S. 564, 573 (1972)), but he failed to present evidence tending to demonstrate that public officials had made untrue and stigmatizing statements about him to the public. When asked about the basis of his procedural due process claim for deprivation of a protected liberty interest, Mr. Eddings made vague reference to newspaper articles about his termination and speculated that Chief Ashcraft must have leaked information to the press. However, Mr. Eddings could not produce or specifically identify the allegedly damaging articles. Further, he provided no evidence to support his allegation that Chief Ashcraft had made statements to the public concerning the termination.

To state a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, it is necessary to show defamation by a state actor during the course of termination. Mascho, 24 F.3d at 1039. Because Mr. Eddings failed to identify evidence that would generate genuine questions of fact concerning the existence of defamatory statements or the source of any such statements, summary judgment was appropriate. Fed. R. Civ. Pro. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial.").

7

# IV.

In the final claim, Mrs. Eddings alleged infringement of her First Amendment rights through a chilling police presence at the Playmates Club and through the retaliatory termination of Mr. Eddings.[4] In essence the First Amendment claim presented two theories of infringement. First, Mrs. Eddings asserted that police presence negatively impacted her working conditions to such an extent that she was effectively starved of income and forced to quit dancing. Second, Mrs. Eddings asserted that by visiting retribution upon Mr. Eddings' employment, the defendants sought to chill Mrs. Eddings' free expression by removing income from her home. The district court determined that Mrs. Eddings lacked standing to bring a First Amendment claim. We agree.

Standing requires, at a minimum, that the plaintiff allege (1) injury in fact; (2) causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (internal citations and quotations omitted). Causation requires that the injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (internal citations and quotations omitted). As the non-moving party facing a summary judgment motion, it was Mrs. Eddings' burden to present some evidence to establish a genuine question of fact on the standing issues of injury and causation. Fed. R. Civ. Pro. 56(e). Because the only injuries alleged were conjectural or hypothetical and were not fairly traceable to defendants, she failed to meet this burden.

---

[4]It appears that the Eddings may have intended to bring a First Amendment claim on behalf of Mr. Eddings as well as Mrs. Eddings. To the extent any such claim was raised and not addressed, a grant of summary judgment is proper based on fact that Mrs. Eddings was the only plaintiff to identify potentially protectable speech.

As an initial matter, we agree with the district court that Mrs. Eddings provided no evidence of any actual or inhibitory effect on her freedom of speech. Thompson, 268 F.3d at 614 (holding that a plaintiff lacked standing due to the absence of injury where the plaintiff failed to offer evidence of any actual or potential inhibitory effect on her speech). To the extent Mrs. Eddings alleged that decreased income and an unpleasant working environment starved her of income and prevented her from working as an exotic dancer, she presented no evidence to particularly describe changes in her income and the record shows that she worked continuously except for a short period of time after she voluntarily left Playmates and before she resumed work in Memphis. As such her alleged injuries in this case are only conjectural or hypothetical.

Even if Mrs. Eddings allegations of having been "starved out" of her profession had been supported by some evidence, her claim would still fail due to the absence of fairly traceable causation. She alleged that police presence at the Playmates Club was responsible for a precipitous drop in her income because, as customers learned that she was married to a police officer, it became increasingly difficult for her to dance and earn her commissions by selling drinks and dances. However, her own deposition testimony revealed that other dancers – and not police officers – had informed customers of her marriage to a police officer.

Finally, she described only abstract reasons to explain how police actions in this case infringed her First Amendment Rights. The following excerpt from her deposition illustrates the attenuated nature of her claim:

Q:     What did any of the Defendants in this lawsuit do to you, Mrs. Eddings, other than what they may have done to your husband? I want to know what they did to you?

R:     As far as me personally, the only experiences that I had is being followed quite frequently, police officers coming into the club

9

and standing there, leaving after I left the stage.  But other than that, I don't – they did not do anything to me, personally.  It was always subsequently to affect my husband, which would affect my job.  Dep. at 14.

Given her failure to identify a particularized rather than hypothetical injury and her failure to provide evidence that could demonstrate injuries fairly traceable to the defendants' actions, the district court properly held that Mrs. Eddings lacked standing to bring a first amendment claim.  Thompson, 268 F.3d at 614 (8th Cir. 2001).

The district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT