# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1990

_____

Judy Allen,                                        *
                                                   *
          Plaintiff/Appellant,               *     On Appeal from the
                                                   *     United States District Court
                                                   *     for the Eastern District
      v.                                       *     of Arkansas.
                                                   *
City of Pocahontas, Arkansas;                      *
Pocahontas Housing Authority; James                *
Black, individually and in his official            *
capacity as a member of Pocahontas                 *
Housing Authority Board of                         *
Commissioners; Mike Dunn,                          *
individually and in his official capacity          *
as a member of Pocahontas Housing                  *
Authority Board of Commissioners;                  *
Max Oakley, individually and in his                *
official capacity as a member of                   *
Pocahontas Housing Authority Board                 *
of Commissioners; Hite Tiner,                      *
individually and in his official capacity          *
as a member of Pocahontas Housing                  *
Authority Board of Commissioners;                  *
S.L. Tyer, individually and in his official        *
capacity as a member of Pocahontas                 *
Housing Authority Board of                         *
Commissioners; Carolyn Loggains,                   *
Director of Pocahontas Housing                     *
Authority, individually and in her                 *
official capacity,                                 *
                                                   *
          Defendants/Appellees.              *

_____

Before McMILLIAN, MELLOY, Circuit Judges, and FRANK,[1] District Judge.
_____

FRANK, District Judge.

Appellant Judy Allen appeals the District Court's[2] order granting summary judgment to Pocahontas Housing Authority, James Black, Mike Dunn, Max Oakley, Hite Tiner, S.L. Tyer, and Carolyn Loggains.[3] For the reasons set forth below, we affirm.

## I. Background

Appellant Judy Allen ("Allen") began working as a maintenance person for the Pocahontas Housing Authority in March of 1980.

Carolyn Loggains ("Loggains"), another employee of the Pocahontas Housing Authority (the "Housing Authority"), was promoted to executive director of that organization in or around 1991. Although Loggains and Allen had previously enjoyed an amicable relationship, their relationship soured after Loggains's

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

[3]The District Court's order dismissing Allen's claims against the City of Pocahontas, Arkansas, has not been appealed.

promotion. In or around 1993 or 1994, Allen was subpoenaed to testify against Loggains in a lawsuit involving allegations of fraud and wrongful eviction of a Housing Authority tenant. In the wake of that incident, the relationship between Allen and Loggains deteriorated even farther. By February of 1997, Loggains and Allen were speaking to one another only when absolutely necessary.

On or about February 5, 1997, Loggains terminated Allen.

On March 7, 1997, Allen received a letter, dated March 5, from the Housing Authority Board of Commissioners ("the Board") stating that, although the Board believed the termination was appropriate, they were reinstating Allen with back pay and benefits because they believed that the personnel policies governing the termination were outdated and in need of revision. The letter further advised Allen to report to work on March 12, 1997.

On March 11, 1997, Allen circulated a petition among the Housing Authority tenants. The petition stated: "We the tenants of the Pocahontas Housing Authority, without prejudice or a biased opinion, feel the Executive Director (Carolyn Loggains) of the Housing Authority, does, with malice, treat the tenants with a disrespectful and demeaning attitude."

One of the tenants, Clark Evans, attempted to take the petition to the Housing Authority office, but asserted that Allen stopped him. Evans called the police. According to the police report, Evans complained that Allen "keeps comming [sic] by his apt. trying to get him to sign a petition to get his landlord fired. States that

Allen has threatened him (Evans) with eviction if he didn't sign. Complainant stated Mrs. Allen was fired from housing project about 2 weeks ago."

On March 12, 1997, the day she was to return to work, Allen called in sick. She continued to call in sick until March 24, 1997.

On March 25, 1997, the Housing Authority gave Allen a copy of its revised personnel policy, and Allen signed a statement indicating that she had received, read, understood, and agreed to the revised policy.

On March 26, 1997, Loggains sent Allen a letter accusing her of making obscene gestures and mouthing an obscenity, both directed at Loggains. Allen requested and was afforded a grievance hearing regarding the letter. Following the grievance hearing on April 4, 1997, the Housing Authority informed Allen that the March 26, 1997, letter would be placed in Allen's personnel file.

On or about April 25, 1997, Loggains resigned from the Housing Authority.

On April 28, 1997, Clark Evans again contacted the police about Allen. According to the police report, Evans complained that Allen

> ha[d] been harrassing [sic] him. He said that Allen who works at Manor Apts is mad at him because he took a petition from her and gave it to the management. Mr. Evans said that Allen has swerved at him w/ her vehicle and keeps harrassing [sic] him. Evans states it has been ongoing.

-4-

On May 21, 1997, S.L. Tyer, Acting Executive Director of the Housing Authority, notified Allen that she was being terminated for insubordination and tenant complaints. Allen requested and received a grievance hearing regarding her termination.

Allen brought suit on February 1, 1999, alleging violations of her First Amendment right to free speech, her Fourteenth Amendment right to due process, 42 U.S.C. §§ 1983 and 1985, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, and Title VII (gender discrimination).

## II.    Discussion

### A.    Standard of Review

We review *de novo* a grant of summary judgment, applying the same standard as the district court and viewing the record in the light most favorable to the nonmoving party. Barrera v. Con Agra, Inc., 244 F.3d 663, 665 (8th Cir. 2001). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B.    Due Process

Allen asserts that she had a property interest in her position with the Housing Authority and was thus entitled to procedural due process prior to termination. She

further alleges that the termination implicated a constitutionally protected liberty interest.

Whether an employee's interest in her job rises to the level of a constitutionally protected property right is a question of state law. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Arkansas law recognizes two exceptions to the at-will employment doctrine: (1) where a personnel manual specifies that termination will only be for cause and (2) where the employment agreement itself specifies that termination will only be for cause. See Rogerson v. Hot Springs Advertising and Promotion Comm'n, 237 F.3d 929, 930 (8th Cir. 2001); Gladden v. Ark. Children's Hosp., 728 S.W.2d 501, 505 (Ark. 1987).

Allen suggests that the practice and procedures in place at the time of Allen's first termination–which is not a part of the record before the Court, except as described in the testimony of former Board chairman Elwood Smith–specified that employees were entitled to certain pre-termination notice and procedures. While that might have been true at the time of Allen's initial termination, the employee manual in place at the time of her second termination provided only for a post-termination grievance procedure, which is insufficient to create a constitutionally protected property interest. See Skeets v. Johnson, 816 F.2d 1213, 1215 (8th Cir. 1987).

Moreover, the only evidence in the record that the "policy" in place at the time of the first termination provided for any sort of pre-termination process is the testimony of former Board Chair Elwood Smith that "you can't fire an employee until you have 20 days notice or something to that effect." (Joint Appendix at 105.)

"Grievance procedures that do not establish any grounds upon which termination must be based do not in themselves create a property interest in employment." Hogue v. Clinton, 791 F.2d 1318, 1324 (8th Cir. 1986) (citations omitted). Indeed, where the procedures "place no significant substantive restrictions on the decision-making," the procedures themselves will not create a property interest in the employment. Id.

Allen urges the Court to recognize another exception to the at-will employment doctrine, one for terminations in violation of public policy. Specifically, Allen asserts that she was terminated because she testified against Loggains in 1993 or 1994 and that, as a result, her termination violated Arkansas law. Again, the Court need not address the outstanding legal question of whether the public policy exception to Arkansas's at-will employment doctrine creates a "property interest" that is protected by the Fourteenth Amendment's guarantee of due process. Here, the record contains absolutely no evidence that Allen was terminated because of her 1994 testimony against Loggains. The mere fact of protected conduct is not sufficient to give rise to an inference of causation, and the extraordinary length of time between the testimony and Allen's termination would belie any attempt to infer causation. Moreover, Allen's second termination came after Loggains herself had left the Housing Authority, and there is no evidence that any of the decision-makers involved in the second termination were even aware of Allen's prior testimony.

The Court turns next to Allen's assertion that she was deprived of a liberty interest without due process. "An employee's liberty interest is implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges."

<u>Shands v. City of Kennett</u>, 993 F.2d 1337, 1347 (8th Cir. 1993). In addition to demonstrating that the proffered reasons for discharge were stigmatizing, an employee asserting violation of a liberty interest must further show that his employer made those reasons public. See <u>Payne v. Ballard</u>, 761 F.2d 491, 493 (8th Cir. 1985).

This Court agrees with the conclusion reached by the District Court. First, the proffered reasons for Allen's termination–insubordination and tenant complaints–are not so sufficiently stigmatizing as to implicate a liberty interest. Second, even if the charges were sufficiently damaging as to implicate a liberty interest, there is no evidence in the record to indicate that any of the Defendants made the reasons for Allen's termination public.

Because the Court concludes that Allen's termination implicates neither a constitutionally protected property interest nor a constitutionally protected liberty interest, Allen's claims under the Fourteenth Amendment were appropriately dismissed.

### C.    First Amendment

Allen asserts that she was terminated, at least in part, because she circulated a petition among tenants on the issue of Loggains's competence. She asserts, as a result, that her termination violated her First Amendment right to free speech.

As this Court stated in <u>Belk v. City of Eldon</u>, 228 F.3d 872, 878 (8th Cir. 2000):

Whether the First Amendment shields a public employee from discharge as a result of her speech requires a two-step judicial inquiry. See <u>Shands v. City of Kennett</u>, 993 F.2d 1337, 1341 (8th Cir. 1993). First, we determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." <u>Connick v. Myers</u>, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); <u>Shands</u>, 993 F.2d at 1342. Second, if the speech addresses a matter of public concern, we balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); <u>Shands</u>, 993 F.2d at 1342. Both inquiries are questions of law for the court to decide. See <u>Connick</u>, 461 U.S. at 148 n.7, 150 n. 10, 103 S.Ct. 1684; <u>Shands</u>, 993 F.2d at 1342.

Applying this analysis, known as the "<u>Connick-Pickering</u> analysis," to the instant case, the Court finds that the District Court properly granted summary judgment in favor of the Defendants on Allen's First Amendment claim.

First, the Court finds that, as a matter of law, the petition Allen circulated was not "on a matter of public concern." The petition states that Loggains was disrespectful and demeaning to the tenants, but it does not suggest that she was derelict in her duty or engaging in malfeasance, merely that her demeanor was unpleasant. Such a statement hardly implicates "a matter of political, social, or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. at 146.

Moreover, Allen herself attempts to argue that the petition was a matter of public concern because she "had every right to build her case to present to the Board for her reinstatement." Appellant's Brief at 43. Even where the content of the speech

is arguably a matter of public concern, "[u]nless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." Buazard v. Meredith, 172 F.3d 546, 548 (8th Cir. 1999).

Second, even if the Court were to accept Allen's contention that the petition was a matter of public concern, the second prong of the Connick-Pickering analysis would nevertheless dictate dismissal of her First Amendment claims. In balancing Allen's interest in the speech with the Defendants' interests in promoting the efficiency of the public services performed through its employees, the Court should consider, inter alia, the time, place, and manner of the speech, and whether the speech interfered with Allen's ability to perform her duties. See Belk v. City of Eldon, 228 F.3d at 880. Given that Allen's "speech" resulted in two complaints to the local police department and a dispute between Allen and Don Walker, a co-worker, and in light of the limited public interest in Allen's concerns, the Court must conclude that the balance of interests clearly weighs in favor of the Defendants' interests in promoting an efficient workplace.

Accordingly, the Court concurs with the District Court's conclusion that Allen's First Amendment claim cannot stand.

### D.    Age and Gender Discrimination

Allen has alleged age discrimination in violation of the ADEA and § 1983. She has further alleged gender discrimination in violation of Title VII and § 1983.

As the District Court noted, the record indicates that the Pocahontas Housing Authority has never employed the threshold number employees necessary to invoke the ADEA (twenty employees) or Title VII (fifteen employees). Although Allen argued in the court below that Pocahontas Housing Authority should be considered part of the City of Pocahontas for purposes of calculating the size of the workforce, Allen has not renewed that argument on appeal. Thus, the question presented on appeal is whether Allen has created genuine issues of material fact sufficient to proceed with claims of gender and age discrimination brought pursuant to § 1983.

Allen's claims of age and gender discrimination, whether sounding under the ADEA, Title VII, or § 1983,[4] all require the Court to engage in the familiar <u>McDonnell Douglas</u> burden shifting analysis.[5] Pursuant to that analysis, the claimant must first proffer a prima facie case of discrimination; the burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment

---

[4]As the District Court noted, there is some question whether an age discrimination claim can be brought pursuant to § 1983 or whether all such claims must be brought pursuant to the ADEA. This is not the case in which to resolve that issue.

[5]On August 4, 2003, Appellant submitted a Motion to Supplement Appellant's Brief and Addendum discussing the United States Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148 (June 9, 2003). The Court grants that motion. Without reaching the issue as to whether the Supreme Court's refocus on the statutory language of the Civil Rights Act of 1991 alters the burden-shifting analysis of *McDonnell Douglas*, the result in this case remains the same. Here, Petitioner has provided no evidence, direct or circumstantial, from which a reasonable jury could logically infer that age or gender was a motivating factor in her termination. *See Desert Palace*, 123 S. Ct. at 2155, citing 42 U.S.C. § 2000e-2(m).

action; and then the burden shifts back to the employee to show that the proffered reason is merely a pretext for discrimination. See Cronquist v. City of Minneapolis, 237 F.3d 920, 923 (8th Cir. 2001).

Allen arguably satisfied her burden of presenting prima facie evidence of discrimination by demonstrating that she was replaced by an employee who was younger than she was and male.

Defendants, however, offered a legitimate, non-discriminatory reason for terminating Allen: insubordination and tenant complaints.[6]

As the District Court noted, Allen offered no evidence whatsoever to indicate that these legitimate non-discriminatory reasons were merely pretextual. Indeed, Allen herself asserted that she did not think she was terminated for her age. When asked whether she was terminated because of her gender, she stated "probably," "I really don't know," and "I can't say for sure." Beyond these equivocal and

---

[6]Allen makes much of the fact that the tenant who complained, Evans, had a criminal history and was not trustworthy. The Court need not determine that Evans truthfully reported his encounters with Allen to the police; it is sufficient that the police reports were available to members of the Board, that they are, on their face, tenant complaints, and that there is no evidence that the Board knew or had reason to believe that the reports were false. This Court has repeatedly held that it is not a "super-personnel department" and that it is not unlawful for a company to make employment decisions based upon erroneous information and evaluations. See Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 957 (8th Cir. 2001).

unsupported assertions by Allen, there is no indication in the record at all that Allen's age or gender played any role in the Board's decision to terminate her.

### E.    Fair Labor Standards Act

As noted by the Court below, the Fair Labor Standards Act is cited in Allen's Complaint, but she did not address the issue in the motion for summary judgment below, nor has she addressed it on appeal.  Accordingly, the Court concurs with the District Court that summary judgment in favor of the Defendants was appropriate on that claim.

## III.    Conclusion

In accordance with the foregoing, we affirm the District Court's judgment in favor of Defendants.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.