Carl CISCO;  St Francis Co.  *v.*
Jerry KING, Louis Pugh, and Herman Greenwood

CA 03-1149                              205 S.W.3d 808

Court of Appeals of Arkansas
Opinion delivered March 23, 2005

310

*Butler, Hickey, Long & Harris*, by: *Andrea Brock*, for appellants.

*Daggett, Donovan, Perry & Flowers, PLLC*, by: *J. Shane Baker*, for appellees.

LARRY D. VAUGHT, Judge. Carl Cisco, the St. Francis County Judge, and St. Francis County, Arkansas, ("the County") appeal a judgment in favor of Jerry King, Louis Pugh, and Herman Greenwood for wrongful termination of employment. The overriding issue presented is whether the Employment and Procedures Manual issued by the County created an employment contract that conferred on appellees the right to be discharged only in accordance with the terms of the manual. After reviewing the evidence and the relevant case law, the trial court concluded that the County's manual established an employment contract that governed termination of employment, and that the County was in breach. We agree and affirm.

For the most part, the facts of this case are not in dispute. In May of 1991, the County adopted an employment manual, which states in most relevant part:

> Except as otherwise provided in these policies and procedures, the tenure of an employee with permanent status shall continue during good behavior and satisfactory performance of his duties except the Road Supervisor and Chief Deputies who are At Will Employees.

On January 4, 1999, these procedures were in full force and effect. On this same day, appellees — Jerry King (employed by the County for seven years as a bridge foreman), Louis Pugh (employed for two years

as an equipment operator), and Herman Greenwood (employed for four and one-half years as an office manager) — were called into a road-crew employee meeting by Carl Cisco, the newly elected St. Francis County Judge. At the meeting, the three appellees were among six members of the road crew who were discharged from employment, including the three appellees. The County, which had prearranged unemployment benefits for these dismissed employees, instructed them to proceed to the unemployment office to make their claims. Each of the appellees did as the County had instructed.

In April 2000, appellees filed a wrongful-termination action against the County. After their claim was denied, appellees filed an appeal in circuit court. The employees claimed that because they were permanent employees and exercised "good behavior and satisfactory performance of duties" and were not working in the excepted positions (Road Supervisor and Chief Deputy), they could only be terminated for cause.

In response to these allegations, the County maintained that the language contained in its employment manual did not create a contract for employment and that it was free to terminate the employment relationship at any time and for any reason, in accordance with Arkansas's "long standing application of the employee at-will doctrine." Alternatively the County argued that even if its manual were considered a contract for employment, the County was not in breach because it had followed the "lay-off" procedures set forth in its manual. The County also asserted that if an employment contract was created by its manual, then appellees should be estopped from relying on the contract because they failed to follow the grievance procedures set forth in the manual. These procedures require that any employee who is demoted, laid-off, or terminated "shall obtain a review of such action or alleged grievance by complying with the grievance procedures. . . ." In order to comply with the procedures, the aggrieved employee is to contact the "elected official" within two working days after the facts giving rise to the grievance occur and are known (or reasonably should have been known).[1]

Based on the proof presented, the trial court made the following factual findings. First, the court concluded that some of the road-crew members retained by the County had less seniority

---

[1] Once this preliminary step is undertaken, according to the manual, an orchestrated series of response and review steps are to follow.

than appellees. Second, the court found that the discharged employees were told by Sonny Hamilton, Judge Cisco's new road supervisor, "that they were simply being temporarily laid-off because of lack of money and they would be called back to work very soon," yet no credible evidence was presented "that the [C]ounty lacked money." Third, the trial court found the County's alternative argument — that appellees were let go pursuant to the lay-off procedures set forth in its manual — incredible, noting that the

> [t]estimony of [the County] that [appellees] were fired because of a work[-]force reduction is not credible. Jerry [K]ing was replaced by Jim Clegg on the same date that he was fired. Herman Greenwood was replaced by Haley Mathis within a week of his firing. Louis Pugh was replaced within a short period of time after his firing.

Fourth, the court found that appellees "did not file a grievance with [Judge Cisco] within the time frame set out in the Employment Policies and Procedures Manual, which required grievances to be filed within a matter of a few days." Finally, the court concluded, based on undisputed evidence, that appellees "were permanent employees and had [ ] no reprimand in their personnel file."

After making these factual findings, the trial court concluded — as a matter of law — that appellees had a valid employment contract with the County and that each appellee was entitled to compensation for lost wages because they "were fired without cause and in violation of the Employment Policies and Procedures Manual of St. Francis County, Arkansas." The court further concluded that — based on the undisputed testimony that appellees were told that the lay-off was temporary and that "that they would be called back to work soon" — the County was "estopped to claim as a defense the failure of [appellees] to file a grievance within the time set out in the Employment and Procedures Manual." It is from these factual and legal conclusions that the County appeals.

■ In bench trials, the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left

with a definite and firm conviction that a mistake has been committed. *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). This court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000). However, a trial court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Murphy v. City of West Memphis*, 352 Ark. 315, 101 S.W.3d 221 (2003).

We are satisfied that each of the trial court's factual findings are supported by a preponderance of the evidence and are not clearly erroneous. Therefore, we will focus our attention on the legal conclusions reached by the court. Our first and most fundamental inquiry is whether the language contained in the County's employment manual was of sufficient force to abrogate Arkansas's at-will doctrine and establish a contract for employment whereby appellees could be terminated only for cause. We begin our analysis with an examination of Arkansas's at-will doctrine.

In Arkansas, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. *St. Edward Mercy Med. Ctr. v. Ellison*, 58 Ark. App. 100, 946 S.W.2d 726 (1997). An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise. *Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671 (2003). The employment-at-will doctrine does have exceptions, however. In *Gladden v. Arkansas Children's Hospital*, our supreme court concluded that an employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract. 292 Ark. 130, 728 S.W.2d 501 (1987).

*Gladden* was a consolidation of two separate wrongful-termination actions. In the first case, a nurse, Loretta Samples, brought a breach-of-contract claim against a hospital that had discharged her for absenteeism. A provision in the hospital's personnel manual stated that any of thirteen offenses, including "chronic tardiness and/or absenteeism," constituted grounds for discharge. Samples interpreted this language to mean that the hospital could terminate her only for the thirteen mentioned offenses. Among other things, the manual provided that in the event of terminating an employee for absenteeism, certain steps

were to be followed, including issuing written warnings. The hospital subsequently agreed to reinstate her, subject to a ninety-day probationary period. Because Samples refused to accept the probation, the hospital fired her. Affirming the trial court, the supreme court ruled that the hospital's actions did not constitute a breach of the manual, noting that "[t]he manual simply lists conduct which could result in termination, with no implications that those infractions alone constitute cause for discharge." *Gladden*, 292 Ark. at 134, 728 S.W.2d at 503–04.

In the second case, Gail Gladden maintained that certain personnel regulations of her employer, a hospital, constituted an employment contract that the hospital had breached in discharging her. Gladden argued for a change in the employment at-will doctrine "to allow a written contract of employment to be enforced which limits the right of an employer to discharge an employee, in the absence of a definite term of employment." *Id.* at 135, 728 S.W.2d at 504. In affirming both cases, the court stated:

> Neither appellant claims she was employed for a definite length of time. Both contend the personnel manuals of the hospitals limit the right to discharge except for cause. We disagree. While the manuals contain provisions describing methods for dismissal under certain circumstances and specifying kinds of conduct that could result in summary dismissal, they do not contain provisions that an employee will not be discharged except for cause. That being so, the cases do not present the issues we defined.

*Id.* at 135–36, 728 S.W.2d at 505. The *Gladden* court also redefined Arkansas's at-will rule by stating:

> We do, however, believe that a modification of the at-will rule is appropriate in two respects: where an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co. v. Matthews*, 64 Ark. 398, 42 S.W. 902 (1897), that the at will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless it is for a definite term. With those two modifications we reaffirm the at will doctrine.

*Id.* at 136, 728 S.W.2d at 505.

■ Four years after the *Gladden* decision, our supreme court revisited Arkansas's at-will doctrine. *Crain Industries, Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). In the *Crain* case, several laid-off employees brought actions for wrongful discharge, relying on a provision in the employer's handbook that provided:

> In the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last employee hired would be the first to be laid off. This policy will be adhered to with one possible exception; that is, under circumstances where the efficiency of a department would be impaired by the loss of some particular employee's skill.

*Id.* at 568, 810 S.W.2d at 911. The exception outlined in the provision was not implicated, and the workers were otherwise at-will employees. Testimony at trial indicated that the employees were aware of these seniority provisions in the handbook and expected the company to follow them. The trial court submitted the case to the jury, instructing it "to find in favor of the employees if the jury found express provisions in the handbook constituting an express agreement." *Id.* at 569, 810 S.W.2d at 912. The jury found that there was an express agreement, and the trial court entered judgment accordingly. Affirming the trial court, the Supreme Court of Arkansas explained:

> Although the handbook in this case did not contain the provision on firing only for cause, the employees contend with respect to the *Gladden* case, "it is clear that the court envisioned a modification of the at-will doctrine in any case in which there was an express provision in the employee handbook governing the procedure at the time of termination." The trial court did not err in presenting the matter to the jury. In the *Gladden* appeal, where we held for the employers because we could find no specific provision in the employment regulations or manual requiring dismissal to be for cause only, one of the appellants cited *Wagner v. Sperry Univac*, 458 F. Supp. 505 (E.D. Pa. 1978). We distinguished the case and stated, "In *Wagner*, a reduction in force was to be governed by seniority in determining who would be laid-off and Wagner's discharge violated that provision." While the holding in the *Gladden* case is hardly a direct adoption of the *Wagner* decision, we did imply that if there were such a provision in an employment manual it would be enforceable, and that is entirely consistent with our explanation that

> an exception to the employment at will doctrine may arise from reliance on a promise made in an employment handbook.

*Id.* at 571–72, 810 S.W.2d at 913. Our supreme court affirmed the application of this exception even though the seniority provisions on which the employees relied did not state the company could discharge employees only on a "for cause" basis.

■ In the case before us, the County contends that *Gladden* is the most relevant precedent because the "for cause" section of its manual — which lists fourteen grounds on which permanent employees "could" be terminated — closely resembles the cause section in the manual discussed in *Gladden*. We note, however, unlike the manuals discussed in *Gladden*, the County's manual contains additional language analogous to the provision reviewed in the *Crain* case. In *Crain*, our supreme court held that an express provision in an employment handbook could constitute a valid and enforceable contract assuming that 1) the handbook language is sufficiently definite to constitute an offer; 2) the offer has been communicated by dissemination of the handbook to the employee; 3) there has been acceptance of the offer; and 4) consideration has been furnished for its enforceability. *Id.* at 572–74, 810 S.W.2d at 913–14 (citations omitted).

■ The County does not dispute that it intended for its manual to apply to its entire workforce and that it understood and expected that the manual would be read and considered by its employees. It argues instead that the specific provisions of the manual relating to job security are not sufficiently definite and comprehensive to be regarded by its workforce as enforceable. The County contends that "[a]t no point does the manual state that the list is conclusive or that St. Francis County has a policy of termination 'for just cause only' or that employees could not be terminated 'without just cause.' " In our view, this argument amounts to nothing more than linguistic gymnastics; it would require moves of contortionistic proportion for us to find that language guaranteeing that "the tenure of an employee with permanent status shall continue during good behavior and satisfactory performance of his duties" is anything but an express promise not to terminate a permanent employee without cause. The logic of this conclusion is amplified when the promise is read in tandem with the exception to the promise, that the Road Supervisor and Chief Deputies remain "At Will Employees."

■ Further, the employment manual distinguishes between probationary and permanent employees, indicating that a new employee must "serve a probationary period" and that no "appointment may be considered as permanent until the probationary period is completed." Further, the manual states that a probationary employee "may be terminated for any reason without recourse. . . ." Thus, it is reasonable for a County employee to expect that if he or she successfully completes the 180-day probationary period, he or she would then be considered a "permanent" employee subject to the duties and entitled to the benefits and safeguards of "permanent" employment. *See, e.g., Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 950 (D.N.J. 1991) (noting argument that "if the company expressly reserves the right to fire for any reason during the probationary period, then the employee who survives has earned the protection of a 'just cause requirement' for termination"); *Beales v. Hillhaven, Inc.*, 825 P.2d 212, 216 (Nev. 1992) (noting that distinction between "permanent" and "probationary" employee status "should be considered as one fact in determining if the employee is something other than at will, [but] this designation alone is insufficient to change the presumption of at will employment"); Andrew D. Hill, *"Wrongful Discharge" and the Derogation of the At-Will Doctrine* 116 (1987) (noting handbook's provisions for "probationary period" may imply that after probationary period had been successfully completed, employee can be terminated only for just cause).

■ We hold that the breadth of coverage and dissemination of the County's manual coupled with the definiteness and comprehensiveness of its termination policy could reasonably lead an employee to expect that the manual created enforceable employment obligations. The continued employment of appellees as permanent employees completed the contract. Therefore, the County could only terminate appellees for cause. The undisputed evidence presented at trial showed that appellees had stellar and unblemished employment records. Based on these facts, we are convinced that the County denied appellees their contractual right to continued employment by dismissing them without cause.

■ We are unpersuaded by the County's alternative argument — offered in the event that we determine a contract was established by its manual — that the dismissal was not a termination, but merely a lay-off that was carried out in harmony with the

manual's lay-off provision. As discussed above, the trial court found this explanation to be lacking in credibility based on its factual findings that each dismissed employee was replaced in short order by the County, that employees with lesser seniority were retained, and that the County made no showing of budgetary restraints. We are obligated to review the evidence in the light most favorable to appellees and resolve all inferences in appellees' favor. In so doing, we find no error in the trial court's conclusion that appellees were fired, not laid-off. This conclusion is supported by the preponderance of the evidence and is not clearly erroneous.

Finally, the County makes a second alternative argument. It argues that if its manual is considered a contract, then there is mutual breach based on appellees' failure to properly perform in accordance with the contract's grievance provision. The trial court rejected this defense, finding that the County was estopped from claiming that appellees had breached the contract because it made a material misrepresentation to the dismissed employees at the time of termination — specifically, that they would be rehired very soon — thus foreclosing the employees' perceived need to file a grievance. The County argues that the trial court's finding of estoppel is a misapprehension of the law and urges reversal on this point.

In order to find that estoppel applies, we must be satisfied that 1) the County knew the true facts; 2) the County intended that its misrepresentation be acted on; 3) the employees were ignorant of the true facts; and 4) the employees relied on the misrepresentation and were injured by the reliance. *See Bedford v. Fox*, 333 Ark. 509, 970 S.W.2d 251 (citing *City of Russellville v. Hodges*, 330 Ark. 716, 957 S.W.2d 690 (1997)).

As to the first element, the evidence was sufficient for the trial court to find that the dismissed employees were misled by Hamilton's statement that the dismissal was temporary and that they would be reinstated soon. Regarding the second element, the trial court properly inferred that the County intended that its misrepresentation be acted upon based on the fact that the County prearranged unemployment benefits for the "short time" that appellees would be off work, which satisfied and occupied appellees until the short time period to execute a grievance — two days — had elapsed. Concerning the third factor, the evidence is ample to establish that appellees were unaware of the true facts. Indeed, the evidence at trial showed that appellees assumed that they

would be rehired just as the County had promised. As a matter of fact, one employee testified that he did not pursue the County's grievance remedy because he believed that he would be called back to work and therefore had nothing to grieve about. Finally, the evidence at trial established that the employees relied on the County's misrepresentation to their detriment — each appellee did as the County instructed and signed up for unemployment benefits instead of filing a grievance. It was only after the period to timely file a grievance had passed that Hamilton revealed to the road crew that they were never getting their jobs back. Thus, as noted by appellees, they were left with litigation as their only alternative. Based on the favorable review standard, where all inferences are decided in appellees' favor, we conclude that the County was properly estopped from asserting mutual breach as a defense in this case because appellees' breach was a result of the County's misrepresentation.

In sum, we find that the County's employment manual contained a job-security provision that applied to its entire workforce and was supported by consideration. Therefore, the manual established a binding commitment on the County to terminate its permanent employees only for cause. Because appellees were terminated without cause, they are entitled to damages, and we affirm the judgment of the trial court.

Affirmed.

HART and CRABTREE, JJ., agree.