# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2051

_____

| | | |
|---|---|---|
| Don Thompson | * | |
| and Caryl Thompson, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Carl Adams, Ed Bean, | * | District of Arkansas. |
| Niels Eskildsen, Harry Graham, | * | |
| and Doug VanDeMark, Sr., | * | |
| Each Individually and In His | * | |
| Capacity as City Councilman; | * | |
| Bob Doolin, Individually and In | * | |
| His Capacity as Mayor; and | * | |
| City of Bull Shoals, A Political | * | |
| Subdivision of the State of Arkansas, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  February 14, 2001

Filed:  October 12, 2001

_____

Before WOLLMAN, Chief Judge, and BOWMAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Approximately five weeks after Caryl Thompson addressed the city council of Bull Shoals, Arkansas, with respect to actions of various council members that she felt were unlawful, the mayor, with the support of the council, fired her husband, Don Thompson, from his position as city street superintendent. He had worked for the city for twenty years.

The Thompsons sued the city, the mayor, and the council members, alleging that they denied Mr. Thompson's due process rights under the fourteenth amendment by firing him without notice, a statement of reasons, and a pre-termination hearing, and that the post-termination hearing that he received was inadequate because of bias on the part of the mayor and the council members. The Thompsons also contended that Mr. Thompson was fired in retaliation for his wife's remarks at the council meeting, thus violating their rights under the first amendment. (For the sake of simplicity, hereafter we refer to the defendants collectively as "the city.")

In their complaint and obliquely in their appellate brief, the Thompsons also seem to assert an equal protection claim under the fourteenth amendment, but apparently they did not pursue that issue in the district court. In their appellate brief, they discuss equal protection questions only as support for their contention that the city's purported reasons for firing Mr. Thompson were pretextual. We therefore conclude that any equal protection claim that was raised has been abandoned.

The defendants moved for summary judgment, arguing first that Mr. Thompson was an "at-will" employee under Arkansas law and therefore possessed no due process rights with respect to his job, and second that no evidence existed to show a causal link between Mrs. Thompson's remarks and Mr. Thompson's firing. The

district court granted summary judgment to the defendants on those grounds, and the Thompsons appeal. We affirm the judgment of the district court.[1]

## I.

We turn first to Mr. Thompson's due process claim. As a threshold issue, we must decide whether, as a matter of law, Mr. Thompson was protected by the due process guarantees of the fourteenth amendment, that is, whether the terms of his employment were such that, under the Constitution, he had a property interest in his job. Even if he did, he would not necessarily be entitled to reinstatement; the city would, however, have to grant him a hearing, if he requested one, where he could be informed of the grounds for his firing and where he could respond to the reasons given for his firing. *See Perry v. Sindermann*, 408 U.S. 593, 603 (1972).

Mr. Thompson was protected by the due process guarantees of the fourteenth amendment only if he had "a legitimate claim of entitlement" to his job, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). We do not look to federal law to determine whether such a claim exists; rather, state law or some other "independent source," *id.*, amounting to "mutually explicit understandings," *Perry*, 408 U.S. at 601, must establish such an entitlement.

The gist of Mr. Thompson's argument is that although Arkansas law customarily considers employment relationships to be "at will," *i.e.*, without security for employees that they will be fired only for cause, *see Gladden v. Arkansas Children's Hospital*, 728 S.W.2d 501, 504-05 (Ark. 1987), *see also Crain Industries, Inc. v. Cass*, 810 S.W.2d 910, 913 (Ark. 1991), and *Drake v. Scott*, 823 F.2d 239, 241 (8th Cir. 1987), *cert. denied*, 484 U.S. 965 (1987), the city's employment policies and procedures manual is an "independent source," *Roth*, 408 U.S. at 577, that establishes

---

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

a property interest for a city employee in his or her job. In this respect, Mr. Thompson contends that, at the least, he has provided sufficient evidence to show that there is a genuine issue of material fact, *see* Fed. R. Civ. P. 56(c), on the question of whether the city's employment manual establishes security for an employee against being fired except for cause and, therefore, provides Mr. Thompson with a property right in his job.

II.

Mr. Thompson directs our attention first to the employment manual's section on "matters affecting the status of employees." Language in that section delineates a grievance procedure in the event of disciplinary action (including firing an employee) and states that the city will give written notice of any disciplinary action to be, or already, taken. The manual also states that each employee is entitled to review of any disciplinary action by means of successive consideration of an employee's written grievance by the employee's immediate supervisor, the employee's department head, the mayor, and the city council. Finally, the manual includes the statement that when the city intends to fire an employee, the city will provide "written reasons that can be supported at a pre-termination hearing." Mr. Thompson asserts that all of these provisions amount to a promise by the city that it will not fire any employee except for cause and thus establish the necessary property interest for him.

The manual also states, however, in the "employment policies" section, that the city is an "at-will employer ... [and] may terminate the employment relationship at any time for any reason with the understanding that [the city] has [no] obligation to base that decision on anything but ... intent not to continue the employment relationship." That section of the manual goes on to add that "[n]o policies, comments, or writings made [in this manual] or during the employment process shall be construed in any way to waive [the] provision" regarding "at-will" employment. The essence of this provision is repeated in the section on "matters affecting the status of employees," which declares that "all employment relationships with the City ... are on an at-will

-4-

basis." That text concludes with the statement that "although the City ... hopes that the relationship with employees is long term and mutually rewarding, the City reserves the right to terminate the employment relationship of any employee at any time."

The Arkansas Supreme Court has flatly stated that unless an employment manual contains an express provision that the employer may not fire an employee except for cause, the employment relationship is "at will." *See Gladden*, 728 S.W.2d at 505. Both this court, following Arkansas law, and the Arkansas Supreme Court have consistently held that, where an employment manual contains no language declaring that an employee will be fired only for cause, nothing abrogates the employee's "at-will" status, short of an explicit promise to the contrary in a seniority agreement, *see Crain Industries, Inc.*, 810 S.W.2d at 911-12, or in oral statements by a supervisor reassuring employees that they would not be fired immediately for failing a drug test, *see Qualls v. Hickory Springs Manufacturing Company, Inc.*, 994 F.2d 505, 506, 509 (8th Cir. 1993). An implied promise is not enough. *See Gladden*, 728 S.W.2d at 505.

Neither a list of grounds for firing an employee, *see Mertyris v. P.A.M. Transport, Inc.*, 832 S.W.2d 823, 825 (Ark. 1992), *see also Gladden*, 728 S.W.2d at 505, nor a description of increasingly more serious disciplinary actions to which an employee may be subject, *see Black v. Barnett*, 999 F.2d 1295, 1296 (8th Cir. 1993) (*per curiam*), nor the delineation of a process for review of disciplinary actions, *see Gladden*, 728 S.W.2d at 505, nor a reference to a mandatory pre-termination hearing, *see Johnson v. City of West Memphis*, 113 F.3d 842, 844 (8th Cir. 1997), is sufficient to alter an employee's "at-will" status in Arkansas. In addition, the presence of language in an employment manual asserting the employer's right to fire an employee at any time is even stronger evidence that the manual creates no guarantee for employees that they will be fired only for cause. *See*, *e.g.*, *Black*, 999 F.2d at 1296.

In our view, the provisions of the city's employment manual that Mr. Thompson cites are no different, in kind or degree, from the provisions that this court and the Arkansas Supreme Court have held are insufficient to establish an employee's property interest for purposes of a due process claim under the fourteenth amendment. The provisions of the city's employment manual are thus inadequate to establish a genuine issue of material fact, *see* Fed. R. Civ. P. 56(c), with respect to the creation of a property interest for Mr. Thompson in his job. The city being entitled to judgment as a matter of law on this issue, therefore, we affirm the district court's grant of summary judgment to the defendants with respect to Mr. Thompson's due process claim.

### III.

We turn next to the Thompsons' first amendment speech claims. In their appellate briefs, the Thompsons offer no argument whatsoever with respect to any protected speech other than that of Mrs. Thompson. At oral argument, however, the Thompsons asserted that Mr. Thompson also engaged in protected speech, namely, during discussions with the mayor about overtime pay. This assertion was never made in any of the district court proceedings, and we therefore decline to consider it in this appeal. Consequently, we need not consider the question of whether any such speech by Mr. Thompson was in fact protected by the first amendment.

Because of the lack of precision in the Thompsons' complaint, it was apparently not clear to the district court (and indeed is not clear to us) whether Mrs. Thompson was asserting a first amendment speech claim based on some act by the city that injured her. At the summary judgment stage, however, the Thompsons offered neither argument nor evidence that Mrs. Thompson was or might be thus injured. Without at least arguable injury, Mrs. Thompson lacked standing to pursue a claim for the violation by the city of her first amendment speech rights. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also* 13 C. Wright, A. Miller,

-6-

and E. Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3531.4, at 418 (1984).

The district court did not explicitly characterize Mrs. Thompson's claim as one that she lacked standing to bring and did not explicitly dismiss the claim. In its discussion of all of the Thompsons' first amendment speech claims, however, the court cited as authority *Kounitz v. Slaatten*, 901 F. Supp. 650 (S.D. N.Y. 1995), a case that does rely on standing principles as the basis for dismissing the first amendment speech claim of a plaintiff in an analogous position to Mrs. Thompson. *See id.* at 654-55. We therefore conclude that, if indeed Mrs. Thompson was making a first amendment speech claim on her own behalf, the district court dismissed that claim because she lacked standing to bring it. We affirm that ruling by the district court.

We turn, then, to a consideration of Mr. Thompson's claim that the city acted unlawfully by firing him in retaliation for Mrs. Thompson's remarks at the city council meeting. The gist of Mr. Thompson's claim is that the first amendment protects certain speech and therefore that firing him in retaliation for protected speech by his wife violated the first amendment. Mr. Thompson is, of course, correct when he states that the first amendment protects speech. What the first amendment provides more particularly, however, is the guarantee that protected speech may not be inhibited, or "chilled," because of the acts or threatened acts of another. *See*, *e.g.*, *Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996).

We noted earlier that the Thompsons offered no evidence of any actual or potential inhibitory effect on Mrs. Thompson's speech consequent to Mr. Thompson's being fired. We concluded, therefore, that Mrs. Thompson lacked the requisite injury to bring such a claim and, accordingly, lacked standing to do so. Mr. Thompson lacked standing for the same reason; to put it simply, the Thompsons have offered no evidence of any injury to the free speech rights of either of them occasioned by

Mr. Thompson's being fired.  We therefore affirm the district court's dismissal of Mr. Thompson's first amendment speech claim.

## IV.

One of the reasons why the district court granted summary judgment to the city is that the Thompsons neither asserted, nor even indirectly offered any factual support for, a retaliation claim grounded in a first amendment right of intimate association, *see Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998), *aff'd in pertinent part*, *Singleton v. Cecil*, 176 F.3d 419, 423 (8th Cir. 1999) (*en banc*), *cert. denied*, 528 U.S. 966 (1999), or a fourteenth amendment right of marital privacy (sometimes characterized as a substantive due process right), *see Singleton*, 133 F.3d at 634-35, *aff'd in pertinent part*, *Singleton*, 176 F.3d at 423.  With respect to the first amendment, *see also Sowards v. Loudon County, Tennessee*, 203 F.3d 426, 432, 433 n.2 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000), and *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999).  With respect to the fourteenth amendment, *see also Morfin v. Albuquerque Public Schools*, 906 F.2d 1434, 1439 (10th Cir. 1990).

In their appellate briefs, the Thompsons explicitly disclaim an appeal of the district court's holding with regard to a first amendment right of intimate association or a fourteenth amendment right of marital privacy.  We therefore need not address those issues.

## V.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-