NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0826n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Dec 12, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ERIC K. WATKINS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: **GILMAN, ROGERS, and STRANCH, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Eric K. Watkins was convicted of four offenses, including conspiracy and armed robbery, for abducting a female employee of a credit union and forcing her at gunpoint to assist him and his brother in stealing the contents of the credit union's vault. Watkins now seeks to overturn his conviction, arguing that the district court erred in admitting expert testimony on fingerprint identification. In the alternative, Watkins argues that his sentence is procedurally unreasonable. For the reasons set forth below, we **AFFIRM** Watkins's conviction, but conclude that the district court committed plain error in sentencing him. We therefore **VACATE** Watkins's sentence and **REMAND** for resentencing.

## I. BACKGROUND

**A.      Factual background**

On July 26, 2004, two men wearing masks invaded Linda Battaglia's home in Groveport, Ohio, abducted her and her two daughters at gunpoint, and threatened to kill Battaglia unless she promised to take them to the vault at Western Credit Union, where she worked. The next morning, the same two masked men forced Battaglia and her daughters to ride with them to the credit union, where they waited for Battaglia's supervisor to arrive. The supervisor was the only one who had the combination to the cash vault. As they waited, the masked men tied up those employees who entered the credit union before the supervisor. When the supervisor finally arrived, the men threatened to kill everyone there if she did not open the vault. The supervisor ceded to their demand, and the masked men left the credit union with an estimated $643,000.

Gary Watkins was later identified as one of the masked men. He was the purported mastermind behind this robbery and a string of similar bank robberies in the region surrounding Columbus, Ohio. His brother, Eric, the appellant in this case, was accused of assisting Gary in only the Western Credit Union robbery. Eric was tied to this robbery by a latent fingerprint found on Battaglia's car that purportedly matched his own.

Before trial, Eric Watkins filed a motion in limine requesting a *Daubert* hearing to determine if the fingerprint-identification testimony met the requirements of Rule 702 of the Federal Rules of Evidence. At the *Daubert* hearing, one of the government fingerprint examiners testified about the technique used to identify the latent fingerprint found on Battaglia's car as that of Eric Watkins. That technique is called the ACE-V method, an acronym for analysis, comparison, evaluation, and

verification. In particular, the examiner testified that where the ACE-V method "is used properly by a competent examiner," the error rate for identification is zero.

The district court determined that the ACE-V method met the *Daubert* test for scientific validity and permitted the government fingerprint examiners to testify at trial. A jury subsequently convicted Watkins of committing a conspiracy (Count 8, under 18 U.S.C. § 371), committing armed robbery of a financial institution (Count 13, under 18 U.S.C. § 2113(a) and (d)), using and carrying a firearm during and in relation to a crime of violence (Count 14, under 18 U.S.C. § 924(c)(I)(A)(ii)), and receiving, possessing, concealing, storing, or disposing of money stolen from a credit union (Count 15, under 18 U.S.C. § 2113(c)).

**B.      Watkins's sentencing**

Watkins's sentencing proceedings were held in October 2005. In the Presentence Report, Watkins was classified as a career offender because he was found to have two prior felony convictions for crimes of violence. As a career offender, Watkins's Guidelines range of imprisonment was from 360 months to life. The probation officer recommended a total term of imprisonment of 360 months: 60 months on Count 8, 276 months on Count 13, and 120 months on Count 15, to be served concurrently with each other, but consecutively to 84 months of imprisonment on Count 14.

Watkins urged the district court not to classify him as a career offender because of the remoteness of his previous convictions. The court rejected Watkins's request. It then asked for any remarks that "[Watkins] wish[ed] to make by way of allocution." In addition to rearguing the reasons that his criminal-offender status was inappropriate, Watkins contended that the 360 months

of imprisonment recommended by the probation officer was disproportionate and excessive. He

pointed out that Frankie Lee Jones, who was convicted for other robberies that Jones had committed

with Watkins's brother Gary, had received only 80 months' imprisonment. Despite the fact that

Jones, unlike Watkins, had assisted the government, Jones was also convicted of more than one

robbery. Watkins argued that his lack of cooperation did not justify sentencing him to a term of

imprisonment four times longer than Jones's. The government countered that Watkins's criminal

history justified the lengthy prison sentence.

Immediately following the government's argument, the district court announced Watkins's

sentence:

> I will now state the sentence I intend to impose but counsel will have a final
> opportunity to make any legal objections before the sentence actually is imposed:
>
> Pursuant to the Sentencing Reform Act of 1984, the advisory guidelines and 18
> U.S.C. 3553(a), it is the judgment of the Court that the defendant, Eric Watkins, shall
> be committed to the custody of the United States Bureau of Prisons to be imprisoned
> for a term of 60 months on Count 8, 360 months on Count 13, 120 months on Count
> 15, to be served concurrently with each other, and 84 months on Count 14, which
> shall be served consecutively to Counts 8, 13, and 15.

Following its recitation of the terms of Watkins's sentence, the district court solicited any objections.

None were forthcoming, and the sentence was imposed.

The sentence for Count 13 as orally pronounced by the district court, however, violates 18

U.S.C. § 2113(d), which sets the statutory maximum for Count 13 at 25 years, or 300 months. Nor

does the oral sentence match the sentence stated in either the minute order from the hearing or the

court's written judgment entered on November 3, 2005, both of which list the term of imprisonment

for Count 13 as 276 months—the length recommended by the probation officer.

Before the sentencing hearing concluded, Watkins requested that the district court direct the clerk's office to file a notice of appeal on his behalf. This request, however, was never carried out. Watkins filed a pro se motion to reinstate his right to appeal on January 12, 2006. The district court entered an order directing the clerk's office to file a notice of appeal *nunc pro tunc* to the date that his sentence was imposed. Ruling that "the district court was without authority to enter the *nunc pro tunc* order," this court dismissed Watkins's appeal for lack of jurisdiction on October 15, 2007.

Watkins then filed a pro se petition with the district court to vacate his sentence under 28 U.S.C. § 2255. The government supported his petition because it had determined that the clerk was clearly at fault for the untimeliness of the notice of appeal. But neither of the parties noted or addressed the discrepancy between the oral pronouncement of the term of imprisonment and the written sentencing judgment.

To remedy the clerk's failure to file a notice of appeal, the district court vacated the sentencing judgment and, on June 10, 2009, reentered a judgment identical to its written November 3, 2005 judgment, sentencing Watkins to a term of imprisonment of 276 months on Count 13 and a total term of imprisonment of 360 months. This timely appeal followed.

## II. ANALYSIS

### A. Sentencing discrepancy

First, we must address the discrepancy created in 2005 between the orally pronounced sentence and the written sentencing judgment. An unambiguous, orally imposed sentence is controlling where it contradicts the written sentencing judgment. *United States v. Penson*, 526 F.3d 331, 334-35 (6th Cir. 2008). At the time Watkins was sentenced, Rule 35(a) of the Federal Rules

of Criminal Procedure allowed the correction of "a sentence that resulted from arithmetical, technical, or other clear error" within seven days after oral announcement of the sentence. *See* Fed. R. Crim. P. 35(a) (2005).

There can be no reasonable doubt that the district court's October 21, 2005 oral pronouncement of a sentence above the maximum set by 18 U.S.C. § 2113(d) for Count 13 constituted a "technical or other clear error" under Rule 35(a). November 1, 2005 was the deadline to correct it, calculating the seven-day period as required by Rule 45(a) of the Rules of Criminal Procedure in 2005. But the district court did not issue its written judgment until November 3, 2005—two days too late. Watkins, however, does not raise this issue on appeal and, because we are vacating and remanding for resentencing on another ground, we need not decide whether Watkins's resentencing in June 2009 or his failure to object in 2005 would preclude a claim for relief on this ground.

**B.**     **The district court did not abuse its discretion by allowing the fingerprint examiners to testify**

Turning now to the issues raised on appeal, Watkins challenges his conviction on only one ground. He argues that his conviction should be overturned because the district court abused its discretion by permitting the government's fingerprint examiners to testify as experts at his trial. We respectfully disagree.

Before an expert may testify at trial, the district "court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *United States*

*v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579, 592-93 (1993)). At the *Daubert* hearing in this case, one of the government fingerprint

examiners testified about the scientific validity of the ACE-V method. She asserted that where the

ACE-V method for identifying latent fingerprints "is used properly by a competent examiner," the

error rate for identification is zero.

Watkins contends that this assertion is false. To support his argument, Watkins cites a 2009

National Research Council report concluding that the claim of fingerprint examiners that "the

[ACE-V] method itself, if followed correctly . . . , has a zero error rate . . . is unrealistic . . . . The

method, and the performance of those who use it, are inextricably linked, and both involve multiple

sources of error (e.g., errors in executing the process steps, as well as errors in human judgment)."

*See* Committee on Identifying the Needs of the Forensic Science Community, National Research

Council, *Strengthening Forensic Science in the United States: A Path Forward* 143 (2009).

There are two problems with Watkins's argument. The first is that we may not consider

evidence that was not before the district court. *See* Fed. R. App. P. 10(a); *United States v. Bonds*,

12 F.3d 540, 552 (6th Cir. 1993) (declining to consider a report that criticized the DNA-matching

methodology used by the government's expert in the case because the report was issued a year after

Bonds's convictions and was not available to the district court at the time of its decision to admit the

testimony). When the district court determined that the ACE-V method met the standards of expert

testimony set out by *Daubert*, the court had before it the testimony of only the fingerprint examiner.

The National Research Council's 2009 report was not available to the court at the time of the

*Daubert* hearing in April 2005.

Watkins's other problem is that, assuming arguendo that the ACE-V method is not error-free, the fact that the fingerprint examiner testified that it was 100% accurate does not by itself mean that the district court erred in determining that the ACE-V method was scientifically valid. The error rate is only one of several factors that a court should take into account when determining the scientific validity of a methodology. *See United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (holding that several factors should be considered in reviewing an expert's methodology regarding the reliability of eyewitness testimony). These factors include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *Id.* At the *Daubert* hearing in this case, the fingerprint examiner testified about custody-control standards, generally accepted standards for latent fingerprint identification, peer review journals on fingerprint identification, and the system of proficiency testing within her lab. Watkins does not challenge the examiner's testimony on any of these other *Daubert* factors, and we decline to hold that her allegedly mistaken error-rate testimony negates the scientific validity of the ACE-V method given all the other factors that the district court was required to consider.

In sum, the 2009 critique of the ACE-V method was not available to the district court at the time of the *Daubert* hearing, and even a less-than-perfect fingerprint-identification method can still be scientifically valid. We therefore have no basis to conclude that the district court abused its discretion by admitting the testimony.

**C.      Watkins's sentence was procedurally unreasonable**

*1.        Standard of review*

We next turn to Watkins's contention that his sentence was procedurally unreasonable. Procedural reasonableness is normally reviewed under an abuse-of-discretion standard. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). Watkins, however, failed to object to any procedural defects when the district court asked for objections following its pronouncement of the sentence at the October 21, 2005 hearing. That failure, according to the government, requires that the procedural reasonableness of Watkins's sentence be reviewed under the more deferential plain-error standard. *See id.* (holding that "[w]here a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error").

We assume without deciding that the plain-error standard of review applies here because it does not affect the outcome of our decision. A sentence will be vacated under plain-error review only if the district court committed an "obvious or clear" error "that affected [the] defendant's substantial rights and . . . the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

*2.        The district court's failure to explain Watkins's sentence constituted plain error*

Watkins argues that the district court's sentencing was procedurally unreasonable even under the highly deferential plain-error standard of review because the court offered absolutely no reasoning for the sentence imposed. We agree.

The district court has a statutory obligation to "'adequately explain the chosen sentence to allow for meaningful appellate review.'" *Wallace*, 597 F.3d at 804 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); *see also* 18 U.S.C. § 3553(c) ("The [sentencing] court . . . shall state in open court the reasons for its imposition of the particular sentence . . . ."). Here, the district court not only failed to provide *adequate* reasoning, it failed to provide *any* reasoning. Immediately after the parties had concluded their arguments at the sentence hearing, the court announced Watkins's sentence. The court never addressed Watkins's contention that his sentence was disproportionate to the one imposed on Frankie Lee Jones, who committed more than one robbery with Watkins's brother but was sentenced to only 80 months in prison. This alone is enough to conclude that the sentencing was procedurally unreasonable under plain-error review. *See Wallace*, 597 F.3d at 802-08 (vacating a sentence under plain-error review for failure to address the defendant's disparity argument).

The government claims that, pursuant to this court's decision in *Vonner*, another plain-error-review case, the district court did not need to address Watkins's disparity argument because the argument was "conceptually straightforward." 516 F.3d at 388. But the government misinterprets *Vonner*.

Vonner "argue[d on appeal] that the district court failed to explain *in sufficient detail* why it rejected some of his arguments for a downward variance." *Id.* at 385 (emphasis added). The key distinction between *Vonner* and this case is that the district court in *Vonner* offered at least some explanation of the chosen sentence, where here there was none. *See id.* at 384. This court noted that "[n]o one would call [the district court's] explanation [of Vonner's sentence] ideal," but nonetheless

held that, as long as the record plainly demonstrated that the district court listened to, understood, and considered each argument that the defendant raised, this court could not conclude that the district court's "brief explanation" constituted a clear error. *See id.* at 386-88. Here, the record does not demonstrate that the district court listened to, understood, or considered Watkins's disparity argument because it provided no explanation whatsoever.

This case, in fact, is much more analogous to *Wallace* than *Vonner*. In *Wallace*, "[the defendant] challenge[d] the procedural reasonableness of her sentence based on the district court's failure to consider her argument that she received" a sentence twice as long as the sentence of "[her co-defendant], even though he played a much larger part in the conspiracy." 597 F.3d at 802. Just like the district court in this case, the district court in *Wallace* "was completely non-responsive to th[e disparity] argument." *Id.* at 803.

Reviewing the procedural reasonableness of Wallace's sentence under the plain-error standard, this court held that the district court committed a clear error by neglecting to respond to defendant's "assuredly non-frivolous" disparity argument. *See id.* at 806. In addition, even though Wallace's sentence was within the Guidelines range, such an error affected her substantial right to meaningful appellate review as well as "the fairness, integrity, or public reputation of judicial proceedings." *See id.* at 806-08 (internal quotation marks omitted); *see also United States v. Blackie*, 548 F.3d 395, 400-03 (6th Cir. 2008) (vacating a sentence in excess of the Guidelines range because the district court failed to state any reason for imposing the lengthier sentence). The district court's "failure to even acknowledge [Wallace]'s argument," this court reasoned, "mandate[d] remand." *Wallace*, 597 F.3d at 805. Because the circumstances in this case are virtually identical to those in

*Wallace*, we too conclude that the district court's sentencing fails to withstand plain-error review. We recognize, of course, that the sentencing proceedings in this case occurred soon after *United States v. Booker*, 543 U.S. 220 (2005), and well before the precedents we rely upon here were handed down.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Watkins's conviction, but conclude that the district court committed plain error in sentencing Watkins. We therefore **VACATE** Watkins's sentence and **REMAND** for resentencing.